UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

IN RE MDL 1720 DAMAGES CLASS      :
SETTLEMENT DISPUTES            :
                                            :   **ORDER ADOPTING REPORT AND**
                                            :   **RECOMMENDATION IN PART**
                                            :

---------------------------------------------------------- X   24-mc-3415 (BMC)

IN RE MDL 1720 DAMAGES CLASS      :   26-mc-1019 (BMC)
SETTLEMENT APPEAL OF REGISTRANT  :
NO. 19181782                    :

---------------------------------------------------------- X

**COGAN**, District Judge.

      This matter is before me on the Report and Recommendation ("R&R") of the Special Master, Judge James Orenstein (Ret.), dated March 17, 2026, which recommends that I find that Teleflora is not a member of the damages class with respect to the transactions of 35,909 of its member florists for whom it acted as payment facilitator.  I have evaluated Teleflora's objections to Judge Orenstein's findings of fact and conclusions of law *de novo*.  Fed. R. Civ. P. 53(f)(3), (4).  For the reasons set forth below, I adopt the R&R in part.

      The settlement agreement defines the damages class as "all persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date [of January 24, 2010]."  In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 735 F. Supp. 3d 249, 254 (E.D.N.Y. 2024) ("PayFacs I"), reconsideration denied, No. 05-md-1720, 2025 WL 2490442 (E.D.N.Y. Aug. 29, 2025), and af'd, No. 24-1653, 2026 WL 1210154 (2d Cir. May 4, 2026) ("PayFacs II").

      In PayFacs I, defendants (Visa, Mastercard, and various issuing and acquiring banks) moved to enforce the settlement agreement or, in the alternative, dismiss claims against them by

Square and Intuit that were "based on transactions in which Square or Intuit served as a 'payment facilitator' for their merchant customers." Id. at 252. The Court (Brodie, C.J.) granted the motion, concluding that the merchant customers of Square and Intuit (the "sellers") were class members and that Square and Intuit (in their role as payment facilitators) were not. See id. at 258-66.

The Court arrived at this result in two steps. First, the Court sought to define the term, "accepted" because it was not defined in the settlement agreement. Id. at 260-62. The Court looked to federal antitrust standards – specifically, Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977) and its progeny. Id. at 263. The Court ultimately concluded that just as "only one entity in a chain of transactions can have antitrust standing[,] ... only one entity in the payment chain can be deemed to have 'accepted' a payment card." Id. at 263-64. The Court reasoned that "[t]his understanding effectuate[d] the intent of the parties in ensuring that, as between competing claimants, only one entity is entitled to make a claim of the settlement fund, which prevents duplicative recovery and further ensures that the Settlement Class is sufficiently ascertainably for purposes of [Rule 23]." Id. at 264. On appeal, the Second Circuit found that the Court properly considered extrinsic evidence of the parties' intent in reaching this determination. PayFacs II, 2026 WL 1210154, at *2.

Second, the Court reviewed the record evidence to determine whether the sellers "accepted" payment cards and concluded that they did. PayFacs I, 734 F. Supp. 3d at 264-66. On appeal, the Second Circuit recounted the Court's finding with approval, outlining how the Court considered various factors including:

> (1) Square's merchant agreement, which states that Square allows merchants "to accept Cards from customers"; (2) Square's Complaint, which alleges that Square "helps Sellers (merchants who utilize Square to accept payment cards ...) start, run, and grow their businesses, including by enabling Sellers to accept card

payments"; (3) Visa's rules, which distinguish between a "Payment Facilitator" and a "Merchant" and provide that an entity cannot simultaneously act as both a payment facilitator and a merchant; (4) Mastercard's rules, under which Sellers "accept" payment cards while payment facilitators facilitate the acquiring of transactions; (5) the Square Sellers' own declarations, which describe themselves as businesses that accept credit and debit cards; (6) the "way real-world transactions are conducted" in which the "cardholder hands her card to a Seller, who 'accepts' it for payment at the point of sale"; and (7) the incongruence of interpreting the word "accepted" to mean that Square "'accepts' a payment card, but the [Square] Seller 'accepts' cash, for two otherwise identical transactions."

PayFacs II, 2026 WL 1210154, at *1 (cleaned up).

In sum, the relevant propositions from the Court's PayFacs I decision, which withstood Second Circuit review, are: (1) only one entity in a payment chain can be a class member; and (2) in a payment chain containing a merchant who accepts cards, and a payment facilitator who enables the merchant to accept cards, the merchant is the class member and the payment facilitator is not.[1]

Why does this matter?  Well, Teleflora wears many hats.  First, Teleflora "operates and maintains the Teleflora.com website in which Teleflora markets and contracts with local florists for the delivery of floral arrangements directly to customers who make payment to Teleflora by credit card."  Plainly put, Teleflora sells flowers online.  Second, Teleflora "serves as a floral clearinghouse provider which receives and transmits orders for flowers to and from member florists throughout the country."  In that capacity, Teleflora provides a number of additional services to its member florists, including providing payment facilitation services.  The result of

---

[1] Teleflora notes that the test for class membership "shift[ed]" from a "direct payor" test – as set forth in Fikes Wholesale, Inc. v. HSBC Bank USA, N.A., 62 F.4th 704 (2d Cir. 2023) – to a "who accepted" test – as set forth in PayFacs II.  But there was no shift.  The Second Circuit recently rejected the argument that Fikes "reduced all disputes over class membership to a 'direct payor' test," reasoning that such an argument "conflate[d] the different legal standards governing an ascertainability challenge and a district court's interpretation of a settlement agreement."  Old Jericho Enter., Inc. v. Visa, Inc., 175 F.4th 172, 178 (2d Cir. 2026).  Here, the district court's *interpretation of a settlement agreement*, as affirmed by the Second Circuit, was that merchants who accepted payment cards were class members.

3

Teleflora's multi-hatted business model is that Teleflora is both a merchant (selling to customers, including its member-florist customers) and a payment facilitator (enabling its member florists to sell to customers).

The question before the Court is whether Teleflora gets to be a class member not by virtue of its own sales, but by virtue of its member florists' sales which it facilitates. Logic must prevail here: Teleflora is not the one accepting cards for the member florists' transactions, so Teleflora is not the one that gets to "accept" the settlement proceeds relating to those transactions.

Teleflora points to a number of factors that purportedly distinguish its situation from the situation presented in PayFacs I. The Court disagrees, and not just because many of these factors were actually considered in PayFacs I. Rather, it simply does not matter how many and in what ways Teleflora differs from Square and Intuit because they are the same in the one respect that matters: they don't accept payment cards. Teleflora tries to further muddy the waters by emphasizing that it accepted credit card payment *services*. That qualified assertion ducks the issue.

Finally, Teleflora's prejudice argument is unavailing. Teleflora says that it has reasonably understood itself to be a member of the class after receiving thousands of notices of the class settlement. But what about the thousands of merchants on whose behalf it seeks to recover? Wouldn't they be prejudiced if Teleflora claimed their settlement payout? Besides, Teleflora *is* a member of the class with respect to transactions relating to its own TIN. That Teleflora came away from the settlement notice with a broader inference than has proven appropriate is not the Court's fault, let alone a due process violation.

4

Accordingly, I adopt Judge Orenstein's R&R in part.  I find that Teleflora is not a member of the class with respect to its member florists' transactions, and so the Class Administrator need not grant it authority to submit claims on the member florists' behalf.[2]  I deny as moot Judge Orenstein's recommendation that Teleflora submit its contract with each member florist on whose behalf it has filed claims, as Teleflora has no right to recover on behalf of its member florists.

**SO ORDERED.**

*Brian M. Cogan*

_____
U.S.D.J.

Dated: Brooklyn, New York
        June 15, 2026

---

[2] I agree with Judge Orenstein that "[t]o the extent Teleflora may have accepted [Visa and Mastercard] payment cards as payment from merchants or others for goods and services that it sold to them, such transactions are not at issue here."  Such transactions could include, for example, payments for flowers made by customers on Teleflora.com, payments for point-of-sale devices made by member florists, and even payments for payment-facilitation services made by member florists.  What Teleflora is not entitled to, as explained *supra*, is damages proceeds relating to transactions that Teleflora facilitated between its member florists and their customers.

5